FILED
2021 NOV 23 AM 10:21
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| MELONIE STAHELI,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Commissioner of Social Security,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 1:20-cv-00159-JCB<br><br><br>Magistrate Judge Jared C. Bennett |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Magistrate Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Melonie Staheli's ("Plaintiff") appeal of Andrew M. Saul's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not

---

[1] Kilolo Kijikazi is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 21.

[2] ECF No. 11.

[3] 42 U.S.C. §§ 401-434.

necessary in this case. Based upon the analysis set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. In April 2018 Plaintiff filed for DIB.[4] Plaintiff's application was denied initially and upon reconsideration.[5] On January 9, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[6] which occurred on March 24, 2020.[7] The ALJ issued a written decision on April 15, 2020, denying Plaintiff's claim for DIB.[8]  On October 16, 2020, the Appeals Council denied Plaintiff's request for review,[9] making the ALJ's decision final for purposes of judicial review.[10]  On November 24, 2020, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[11]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal

---

[4] ECF No. 18, Administrative Record ("AR __").

[5] AR 24.

[6] *Id.*

[7] *Id.*

[8] AR 32.

[9] AR 1.

[10] 42 U.S.C. §§ 405(g); 20 C.F.R. §§ 404.981.

[11] ECF No. 3.

2

standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

These standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [s]he is not eligible for disability benefits. If, on the other hand, the

---

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[13] 42 U.S.C. § 405(g).

[14] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted) (first alteration in original).

[17] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. §§ 404.1520(a)(4).

> claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.
>
> . . . .
>
> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .[19]

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work."[20] "If the claimant is able to perform [her] previous work, [s]he is not disabled."[21] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[22]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[23] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[24] If it is determined that the claimant "can make an

---

[19] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii).

[20] 20 C.F.R. §§ 404.1520(a)(4)(iv).

[21] *Williams*, 844 F.2d at 751.

[22] *Id*.

[23] *Id*.

[24] *Id*. (quotations and citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v).

adjustment to other work," she is not disabled.[25] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[26]

## ANALYSIS

Plaintiff claims that the ALJ's denial of benefits is unsupported by substantial evidence because the ALJ allegedly failed to adequately consider and discuss the opinions of Dr. James M. Ottesen as the Commissioner's regulations require.[27] Specifically, Plaintiff claims that the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520c, which, Plaintiff argues, required the ALJ to discuss the supportability and consistency of those opinions. As shown below, although true that the ALJ did not discuss Dr. Ottesen's opinions, the ALJ did not err because Dr. Ottesen's opinions are not "medical opinions" under the governing regulations. Therefore, the ALJ was not required to discuss Dr. Ottesen's opinions under 20 C.F.R. § 40.1520c.

Under 20 C.F.R. § 404.1520c, the ALJ was not required to discuss Dr. Ottesen's findings because he did not provide "medical opinion" under the Commissioner's regulations. In interpreting regulations, the court applies "the same rules used to interpret statutes."[28] Consequently, the court begins its "analysis by examining the plain language of the text of the regulation, giving the words their ordinary meaning."[29] When engaging in its "plain language"

---

[25] 20 C.F.R. §§ 404.1520(a)(4)(v).

[26] *Id.*

[27] ECF No. 22 at 2.

[28] *Bd. of Educ. of Gallup-McKinley Cty. Sch. v. Native Am. Disability L. Ctr., Inc.*, 959 F.3d 1011, 1013 (10th Cir. 2020).

[29] *Id.*

analysis, the court relies on canons of construction. One such canon requires the court to apply the meaning of a word or phrase that the regulation assigns to that term or phrase to the exclusion of all other definitions.[30] Another relevant canon forbids the court from interpreting a regulation in a fashion that renders any part of it superfluous. Instead, the court must read each phrase of the regulation as having "distinct meaning."[31]

With these construction rules in mind, the court turns to 20 C.F.R. § 404.1520c. Section 1520c(a) provides that even though the Commissioner "will not defer or give any specific evidentiary weight to any medical opinion(s)," the Commissioner will analyze the persuasiveness of those "medical opinions" under five factors, only two of which are mandatory. The regulations further require the ALJ to "articulate how [he/she] considered the medical opinions . . . from that medical source together in a single analysis using" the five aforementioned factors.[32] Thus, the plain language of section 404.1520c requires the ALJ to consider and discuss in the ALJ's decision only "medical opinions."[33]

---

[30] *See, e.g., Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.").

[31] *Chevron Mining, Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017) (stating that the court "must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning").

[32] 20 C.F.R. § 404.1520c(b)(1).

[33] Section 404.1520c(b)(1) also imposes a duty on the ALJ to consider "prior administrative medical findings," but neither party contends that Dr. Ottesen's opinions meet this regulatory definition. Therefore, the court will not discuss it further.

The Commissioner's regulations define the term "medical opinion,"[34] which the court must apply here. Under 20 C.F.R. § 404.1513(a)(2), "medical opinion" means:

> a <u>statement</u> from a <u>medical source</u> about <u>what you can still do despite your impairment(s)</u> *and* <u>whether you have one or more impairment-related limitations</u> or restrictions in the <u>following abilities</u>:
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.[35]

Thus, the elements of a "medical opinion" are: (1) a statement; (2) from a medical source; (3) about what Plaintiff can still do despite her impairments; <u>and</u> (4) whether Plaintiff has one or more impairment-related limitations or restrictions based on several enumerated abilities. Because the regulation uses the word "and" between the third and fourth elements, the court presumes that "and" is used in its "ordinary, conjunctive meaning."[36] Applying the conjunctive meaning of "and" here also furthers the canon of construction that gives each phrase its own independent meaning. To interpret each phrase as requiring the same proof would also ignore the

---

[34] 20 C.F.R. § 404.1513(a)(2).

[35] *Id.* (emphasis added to highlight elements).

[36] *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1332 (11th Cir. 2005) ("More specifically, unless the context dictates otherwise, the word 'and' is presumed to be used in its ordinary sense, that is, conjunctively.").

regulation's plain language and would render superfluous a portion of the "medical opinion" definition. Therefore, Plaintiff must establish all four distinct elements to show that Dr. Otteson's findings constitute a "medical opinion" under the Commissioner's regulations.[37]

The parties agree that Dr. Ottesen's opinions meet the first and second elements of the aforementioned definition because they constitute a statement from a medical source. However, the parties dispute whether Dr. Ottesen's opinions meet the third and fourth elements of "medical opinion." As shown below, Dr. Ottesen's opinions meet the fourth element, but they fail to meet the third. Accordingly, Dr. Otteson did not render a "medical opinion" that the ALJ was required to discuss in his decision under 20 C.F.R. § 404.1520c.

Dr. Ottesen's report meets the fourth element of "medical opinion" because it focuses on Plaintiff's impairment-related limitations regarding her "ability to perform mental demands."[38]

---

[37] This interpretation of "medical opinion" is also consistent with the regulation's preamble. Although a regulation's preamble is "not controlling over the language of the regulation itself," courts recognize "that the preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999). One of the purposes for the 2017 revision to the Commissioner's regulations governing evidence in disability claims was to revise the definition of "medical opinion" in 20 C.F.R. § 1513(a)(2). Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,562 (Sept. 9, 2016). The revision to the definition of "medical opinion" was intended to narrow the existing definition. *Id.* As part of this narrowing, the preamble provides that "[d]iagnoses and prognoses do not describe how an individual functions. . . . A more appropriate focus of medical opinions would be perspectives from medical sources about claimants' <u>functional abilities</u> *and* <u>limitations</u>." *Id.* (emphasis added). Lest there be any doubt, the preamble further states: "To help make our evidence rules easier to use and apply, we propose to redefine medical opinions to combine relevant, current text about <u>functional abilities</u> *and* <u>limitations</u> from different regulatory sections." *Id.* (emphasis added). Accordingly, discussing functional ability is a separate requirement from discussing functional limitations, both of which matter much more to "medical opinion" than just diagnoses, and prognoses.

[38] 20 C.F.R. § 1513(a)(2)(ii).

Dr. Ottesen performed tests with Plaintiff.[39] Based on the results from these tests, Dr. Ottesen mentions the limitations that Plaintiff has in, among other things, understanding, remembering, and maintaining concentration.[40] By illustration, Dr. Ottesen observes that Plaintiff "has cognitive defects in the areas of acquiring, retaining and retrieving general factual knowledge . . . concentration, attention, short-term memory, long-term memory" among many other things. Thus, Dr. Ottesen's report clearly discussed "impairment-related limitations" for Plaintiff's ability to perform mental demands, which meets the fourth element of a "medical opinion" under the Commissioner's regulations.

However, Dr. Ottesen's opinions fail to meet the third element of "medical opinion" because they fail to discuss what she can do despite her impairments. Dr. Ottesen states that Plaintiff's "prognosis for completing on-the-job training and maintaining full-time, gainful employment is fair to good <u>as long as the job tasks are within her ability level</u>, she receives adequate supervision/training/accommodations, and she is provided sufficient time to perform her tasks."[41] Instead of stating what Plaintiff can do despite her limitations, Dr. Ottesen's finding merely begs the question: What "tasks are within [Plaintiff's] ability level"?[42] Indeed, Dr. Ottesen does not state what Plaintiff's ability level is or which tasks her ability level would allow her to perform. Although Dr. Ottesen opines that Plaintiff can and should "resume full-time

---

[39] AR 624-26.

[40] AR 624-28.

[41] AR 627 (emphasis added).

[42] AR 627.

employment as soon as possible," one is left to wonder what tasks Dr. Ottesen believes that Plaintiff could perform in such employment. Thus, Dr. Ottesen's opinion is bereft of any discussion about what Plaintiff can still do despite her impairments. Accordingly, Dr. Ottesen's opinion does not meet the third element of "medical opinion" under 20 C.F.R. § 404.1513(b)(2).[43]

Because Dr. Ottesen's opinion fails the third element of "medical opinion" under section 404.1513(b)(2), it does not constitute "medical opinion" under the regulations. This is significant here because section 404.1519c only requires the ALJ to discuss "medical opinions" in his/her decision.[44] Because Dr. Ottesen's opinions are not "medical opinions" under the regulations, the ALJ did not have a legal obligation to discuss those opinions under 20 C.F.R. § 404.1520c. Accordingly, the ALJ's failure to discuss Dr. Ottesen's opinions does not violate any regulatory obligations and does not show that his decision fails for want of substantial evidence.

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

---

[43] The court acknowledges that the ALJ chose to discuss Dr. Anderson's opinion, which, according to the court's reading, appears to also lack any discussion about what Plaintiff can still do despite her impairments. AR 608-614. However, the fact that the ALJ chose to discuss Dr. Anderson's opinion while declining to discuss Dr. Ottesen's is of no moment because an ALJ can choose to discuss any opinion—medical or otherwise—that he/she wishes. However, the regulations *require* discussion only of "medical opinion." 20 C.F.R. §404.1520c(b). Because Dr. Otteson's opinion was not a "medical opinion" as that term is defined the Commissioner's regulations, the ALJ's omission of that opinion is not a fatal flaw that requires remand.

[44] 40 C.F.R. § 404.1519c(b)(1).

DATED November 23, 2021.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge